**SAFEWAY MANAGING GENERAL AGENCY FOR STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**Donna Michelle COOPER, Maria Tello and Jose Tello, Appellees.**

No. 07–96–0333–CV.

Court of Appeals of Texas, Amarillo.

Aug. 19, 1997.

Opinion Overruling Rehearing Oct. 1, 1997.

Robert L. Grover & Associates, Robert L. Grover, Houston, for appellant.

Law Office of Woodrow W. Miller, Woodrow W. Miller, Houston, for Donna Michelle Cooper, Walter M. Fortenberry & Associates, Walter M. Fortenberry, Humble, for Tellos.

Before BOYD, C.J., and DODSON and QUINN, JJ.

BOYD, Chief Justice.

In this appeal from a declaratory judgment, we are asked to review a trial court declaration that a named driver exclusion in a contract for automobile insurance was ineffective to deny coverage under the policy. We are also asked to determine the propriety of the inclusion of a third party claimant in the declaratory judgment. For reasons we later discuss, we reverse and remand the judgment of the trial court, with the exception of that portion awarding Cooper's attorney fees. The severed portion of the judgment awarding attorney fees is affirmed.

For a proper discussion, we must recount the factual background of the case. On September 24, 1991, Jose Tello made application to Safeway Managing General Agency (Safeway) for an automobile insurance policy. Because she did not have a driver's license, Jose's wife Maria was specifically excluded. A policy was issued to Jose which provided for renewal on a monthly basis as premiums were paid. On September 8, 1992, Donna Michelle Cooper (Cooper) was driving a car involved in a collision with Jose's truck. Jose reported the collision to his local agent the same day and told the agent he had been driving the car. Safeway investigated the accident and discovered that Maria had been driving the truck but concluded that she was not at fault. As a result of its investigation, Safeway denied Cooper's claim. Because of that denial, Cooper filed suit against Jose and Maria alleging negligent entrustment and negligence respectively. By letter dated December 18, 1992, Safeway offered to provide a defense of the suit under a reservation of rights.

Before the negligence suit proceeded to trial, Safeway brought this action on July 14, 1993, seeking declaratory judgment pursuant to the Uniform Declaratory Judgments Act. Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–011 (Vernon 1997). In the action, Safeway seeks a holding that it had no duty to tender liability coverage or defend Jose or Maria, because Maria was excluded as a driver under the policy. The Tellos initially counterclaimed asserting estoppel, violation of the Insurance Code, violation of the Deceptive Trade Practices Act,[1] and breach of the duty of good faith and fair dealing, although they abandoned their claims seeking affirmative relief before trial. Cooper answered, challenging her inclusion in the declaratory judgment action and asserted a counterclaim seeking a recovery, including attorney fees, under Rule 13 of the Rules of Civil Procedure.

After a bench trial, the court entered judgment declaring the driver exclusion inapplicable and that both Maria and Jose were entitled to coverage under the policy. The trial court also awarded attorney fees to both the Tellos and Cooper but denied Cooper any other relief. Safeway now challenges that judgment in six points of error and Cooper presents seven cross-points.

In its first two points, Safeway challenges that portion of the judgment decreeing that Maria and Jose were entitled to coverage under the policy. In support of those con-

1. *See* Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 & Supp.1997).

tentions, Safeway presents 11 subpoints challenging specific findings of fact and conclusions of law made by the trial court. Because these points are so closely related, we consider them together.

 Insurance contracts are generally construed as any other contract. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). However, this rule is subject to the proviso that if there is an ambiguity in the terms of an insurance contract, it is to be construed in favor of the insured. *Southern Life and Health Ins. Co. v. Simon*, 416 S.W.2d 793, 795 (Tex.1967). Insurance contracts must also be in compliance with the Texas Insurance Code.

 Three provisions of the Insurance Code, articles 5.06,[2] 21.35, and 21.58 have particular significance to our discussion. During the relevant time period, article 5.06 provided in pertinent part:

(2) Except as provided by Subsections (3) and (4) of this article, an insured may only use a form adopted by the Board under this section in writing motor vehicle insurance [ ] in this State. A contract or agreement not written into the application and policy is void and of no effect and in violation of the provisions of this subchapter, and is sufficient cause for revocation of license of such insurer to write automobile insurance within this State.

(3) The Board may approve the use of a policy form adopted by a national organization of insurance companies, or similar organization, if the form, with any endorsement to the form required and approved by the Board, provides coverage equivalent to the coverage provided by the form adopted by the Board under Subsection (1) of this section.

(4) An insurer may use an endorsement to the policy form adopted or approved by the Board under this article if the endorsement is approved by the Board.

**2.** Although Cooper makes 11 references in her brief to article 5.06(2) of the Insurance Code, she objects to Safeway's inclusion of the 1992 version of that statute as an appendix to its brief as

Texas Insurance Code article 5.06 (Vernon Supp.1997).

Article 21.35 provided:

Except as otherwise provided in this code, every contract or policy of insurance issued or contracted for in this State shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto. [ ]

Texas Insurance Code article 21.35 (Vernon 1981).

Article 21.58(b) provided:

In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules or Civil Procedure. Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or an affirmative defense.

Texas Insurance Code article 21.58(b) (Vernon Supp.1997).

There are three relevant documents in determining the terms of the original insurance contract: 1) Jose's September 21, 1991 application for insurance, 2) the pre-printed policy form, referred to as the "policy jacket" by the parties, and 3) the declarations page showing the vehicle covered, the amounts of coverage, and the endorsements and exclusions.

 Appellees argue that the named driver exclusion on the application upon which Safeway relies was ineffective because it was not on the form promulgated by the State Board of Insurance. However, contrary to their contention, article 5.06 does not actually require the use of the form promulgated by the Board but only requires that the form used be approved by the Board. In that regard, by producing the uncontroverted testimony of Don Brill, a claims manager, that the application form had been approved by the Board, Safeway met the burden imposed

"evidence that is not in the appellate record." We note the instruction in *Kish v. Van Note*, 692 S.W.2d 463 (Tex.1985), that we must recognize public statutes of this state. *Id.* at 467.

upon them by article 21.58(b) to establish that fact.

◼ Even so, citing article 21.35, appellees argue that the trial court was correct in finding that the application form had not "accompanied" the policy and, because it did not do so, the named driver exclusion on the form was ineffective. The only evidence on the question was that Safeway would ordinarily send the "policy jacket and everything" to the agent who would then forward it to the insured. Safeway did not call the agent who sold the policy. We do not agree with the argument that the text in the margin of page 3 of the policy jacket instructing the user to "attach declarations page and endorsements to top edge of this page, to complete policy," is an incorporation by reference. That is merely precatory language not a part of the agreement. *Welch v. McDougal,* 876 S.W.2d 218, 225 (Tex.App.—Amarillo 1994, writ denied).

◼ Our courts have long held that the failure to attach an application to a policy in violation of the dictates of article 21.35 prevents the introduction of the application for the purpose of showing misrepresentations by the applicant. *Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d 279, 283 (Tex.1994). In such instances the application, *per se,* is excluded from the contract. *National Life & Accident Ins. Co. v. Collier,* 31 S.W.2d 465, 467 (Tex.Civ.App.—Beaumont 1930, no writ). That being true, we cannot consider the provisions of the application in deciding this appeal. Parenthetically, it is worth noting that the application is effective as an offer to contract. However, without compliance with the statute, it is simply not a part of the resulting contract. *Id.* at 467.

◼ The declarations page, which was incorporated into the policy by reference, listed the name of the insurance company, Jose's name and address, his automobile, the policy period,[3] the amount of coverage and its cost, and "Endorsements and/or Exclusions." The last listed section included the text "EXCLUDE MARIA." Thus, that exclusionary language was incorporated in the policy by reference, thereby satisfying the requirements of article 5.06.[4] Additionally, the contract taken as a whole is not ambiguous.[5]

◼ It is well established that external evidence may not be used in interpreting an unambiguous contract. *National Union,* 907 S.W.2d at 520; *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981). Consequently, although appellees place considerable emphasis in their argument on Safeway's Texas Automobile Underwriting Guide and the Insurance Board's Form 515, we may not resort to those extraneous sources in our interpretation. We hold that at the time of its issuance, the policy effectively excluded Maria as a driver.

◼ Having made that decision, we must next decide if the exclusion was removed from the policy prior to the time of the collision. Included in the general provisions section of the policy was a section entitled "Changes." It provided:

> This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change.

> If this policy form is revised to provide more coverage without additional premium charge, we will automatically provide the

---

3. The initial policy period was one month.

4. Appellee Cooper cites *Anderson v. Aetna Casualty and Surety Co.,* 432 S.W.2d 151, 153 (Tex. Civ.App.—Fort Worth 1968, writ ref'd n.r.e.), for the proposition that "an endorsement must be attached to and presented with the policy when issued" to be effective. The case actually holds that if an endorsement is physically attached to a policy and referred to in the policy, it can be effective even without the insured's signature. *Id.*

5. Even if the words "exclude Maria" were ambiguous, the declarations page contains the following reference:

> Named insured warrants there are no other drivers in the household other than those listed in the application or endorsement.

The application's language is explicit and would, if considered necessary, remove any ambiguity.

additional coverage as of the date the revision is effective.

At the end of the initial period of one month, Safeway sent a renewal notice to Jose. This document, entitled "Renewal Premium Notice" was on a form virtually identical to the declarations page but the section labeled "Endorsements and/or Exclusions" is blank. Subsequent renewal notices, including the one covering the period in which the collision occurred also omitted any reference to the exclusion at issue. On October 16, 1991, Safeway issued a "General Change Endorsement" adding the lienholder on Jose's truck as a payee under the policy. This endorsement also contained a section labeled "Endorsements and/or Exclusions" which only contained the word "Maria." Appellees posit that the omission of any reference to the exclusion of Maria in the renewal notices was sufficient to modify the policy coverage to which Safeway responds that it could not, as a matter of law, merely by sending the notices, unilaterally modify the policy coverage.

▇▇▇▇ The policy jacket and the declarations page make clear that the policy period was one month. The renewal notice stated that payment must be received before the end of the policy period or the "policy will expire." The evidence is undisputed that the policy did, in fact, expire due to nonpayment of premiums on more than one occasion. On each of these occasions, Jose reinstated coverage by paying the premium for an additional month. Thus, it seems clear that the policy did not furnish continuous coverage from its original date to the date of the collision but was renewed for each successive policy period. *See Great American Indemnity Co. v. State*, 229 S.W.2d 850, 853 (Tex. Civ.App.—Austin 1950, writ ref'd). Because the policy coverage was on a month-to-month basis which required a renewal of coverage each month, each monthly policy period was a new coverage agreement between the Tellos and Safeway. Consequently, the rule that modification of an existing contract must be based on new consideration is not applicable. *See Hathaway v. General Mills Inc.*, 711 S.W.2d 227, 228 (Tex.1986) (stating general rule); *Travelers Indemn. Co. v. Ed-*

*wards*, 462 S.W.2d 533, 535 (Tex.1970) (applied to insurance contract).

▇▇▇▇ However, where parties agree to renew an insurance contract and no new terms are added, the new agreement incorporates the provisions of the old agreement. *International Motorists Ass'n. v. Aguilar*, 402 S.W.2d 516, 520 (Tex.Civ.App.—Austin 1966, writ dism'd). There is no good reason why the requirement of mutuality applicable to a modification of an existing agreement would not also be applicable to make a change in a contract extended by agreement. *See Fubar v. Turner*, 944 S.W.2d 64, 67 (Tex.App.—Texarkana 1997, n.w.h.). Just as one party may not unilaterally create a binding contract or modify an existing contract, *id.*, it may not change the terms of a renewed contract without the agreement of the other party. There is no evidence that there was any meeting of the minds on a change in the original contract at any of the renewal periods.

That conclusion is strengthened by both the text of the policy and the conduct of the parties when they did seek to modify the agreement. As we have noted, the written policy provided that changes required the issuance of an endorsement by State and County Mutual. When the parties to the policy sought to modify it by adding a lienholder's name as the loss payee, they did so by a document entitled "General Change Endorsement." That change endorsement included Maria's name in the section entitled "Endorsements and/or Exclusions." No other change endorsements were shown.

▇▇▇▇ Finally, Safeway's omission of the named driver exclusion on the renewal notices cannot estop it from asserting the exclusion. In *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601 (Tex.1988), the court held that the estoppel doctrine cannot be used to create coverage when none exists by the terms of the policy. *Id.* at 602–03. There is an exception to the rule where an insurer, with knowledge of facts indicating noncoverage, assumes the defense of its insured without obtaining a non-waiver agreement or a reservation of rights. *Paradigm Insurance Company v. Texas Richmond*

*Corporation*, 942 S.W.2d 645, 652 (Tex. App.—Houston [14th Dist.] 1997, n.w.h.). Although at trial appellees argued Safeway had undertaken an unqualified defense and requested findings to that effect, no such finding or conclusion of law supporting an element of this defense appear in the record. Under Rule 299 of the Rules of Civil Procedure, no judgment may be based on a ground for which no supporting element has been included in the findings of fact. Tex.R. Civ. P. 299. Safeway's first and second points are sustained.

In its third point, Safeway challenges the trial court award of attorney fees to the Tellos. Because we sustained Safeway's first two points, the Tellos were not entitled to the award of attorney fees. That holding is also dispositive of Safeway's fifth point in which it challenges the manner in which the attorney fees were ordered to be paid. Accordingly, Safeway's third and fifth points are sustained.

■ Because it is dispositive of Safeway's fourth point, we next consider Cooper's first cross-point assigning error to the denial of her motion for directed verdict in which she asserted she was not a proper party to the declaratory judgment proceeding. In support of that position, she argues there was not justiciable controversy between her and Safeway. Relevant to this question are Rule 39(a)(2) of the Rules of Civil Procedure and section 37.006(a) of the Civil Practice and Remedies Code. Rule 39(a)(2) provides for the joinder of any party amenable to service of process who claims an interest in the subject of the suit and whose absence may leave any other party subject to a substantial risk of inconsistent judgments. Section 37.006(a) says that when declaratory relief is sought, "all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem.Code § 37.006(a) (Vernon 1997).

In *National Savings Insurance Co. v. Gaskins*, 572 S.W.2d 573 (Tex.Civ.App.—Fort Worth 1978, no writ), the court was presented with a similar question and analogous facts. In *Gaskins*, as here, an insurer brought a declaratory action against its insured and against third parties who were asserting claims against the insured. *Id.* at 574. The insurer sought a declaration as to its duty to defend the insured and, in doing so, included the third parties so that they would be bound by the court's judgment. In its opinion, the appellate court pointed out the constitutional provision against advisory opinions [6] necessitates the existence of actual, rather than hypothetical or contingent, controversy before declaratory judgment may be sought. *Id.* at 574–75 (citing *California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780 (1960)). With regard to the inclusion of the third party claimants, the court held that because the insured's liability to the third party had not been determined at the time the declaratory judgment was sought, there was no actual controversy between the insurer and the third parties. In doing so, the court rejected the insurer's argument that there was a justiciable controversy arising from the third parties' interest in recovering any judgment against the insured. In explanation of that conclusion, and citing *Firemen's Insurance Co. of Newark v. Burch*, 442 S.W.2d 331 (Tex.1968), the court noted that the obtaining of a judgment by the third parties was a contingent event rendering any opinion on the insurer's liability to them advisory. *Gaskins*, 572 S.W.2d at 576.

The court also discussed the effect of article 2524–1 § 11, the predecessor and progenitor of section 37.006 of the Civil Practice and Remedies Code.[7] In its discussion, the court reasoned that because the only real controversy before the court was the insurer's duty to defend the suit which was an entirely different question from that of the insured's possible liability to the third parties. That being true, the court concluded, the third

---

**6.** Tex. Const. art. 5, § 8.

**7.** The 1985 repeal of article 2524–1 and creation of section 37.006 was part of the legislature's continuing non-substantive revision and codification of our statutes. *See* Steven R. Collins, *Continuing Statutory Revision: Where Did the Civil Practice and Remedies Code Come From?*, 50 Tex. B.J. 134 (1987).

party claimants, who were not parties to the contract, would not be affected by the contractual suit. It also believed that the likelihood that some of the same questions might arise in an action to recover any judgment the third parties might obtain in the future did not change this result. Thus, it concluded that the trial court correctly dismissed the third parties. *Gaskins*, 572 S.W.2d at 576. *See also Standard Fire Ins. v. Sassin*, 894 F.Supp. 1023 (N.D.Tex.1995).

Also, in *Providence Lloyds v. Blevins*, 741 S.W.2d 604 (Tex.App.—Austin 1987, no writ), the Austin Court of Appeals was presented with a similar set of facts and came to the same conclusion as did the *Gaskins* court. In *Blevins*, a group of homeowners sued the builder of their homes, J.D. Blevins, Inc., for breach of warranty. Blevins's insurer, Providence Lloyds, brought a declaratory action against the builder and the homeowners seeking a declaration that it had no duty to defend Blevins and would not be liable for any judgment obtained by the homeowners. The Court of Appeals affirmed the trial court's dismissal of the homeowners because of the lack of a justiciable dispute.

■ We agree with the above decisions and, because of that agreement, we sustain Cooper's first cross-point. In connection with the award of attorney fees to Cooper, she presented the testimony of her attorney Woodrow Miller concerning the reasonable necessity of such fees and the amount thereof. That testimony was sufficient to sustain the award to Cooper. Accordingly, Safeway's fourth point challenging that award is overruled. *See Herring v. Bocquet*, 933 S.W.2d 611 (Tex.App.—San Antonio 1996, no writ) (affirming award of attorney fees to prevailing declaratory judgment defendants).

■ In its sixth point of error, Safeway challenges the manner in which the trial court awarded Cooper's attorney fees. In its judgment, the trial court provided "[i]f this action is appealed to the court of appeals by Safeway [ ] and the judgment is upheld [ ] Donna M. Cooper shall recover, and Safeway is obligated to pay an additional amount of $2,500 for attorney fees." It contained like provisions for $1,250 for responding to a writ of error and another $2,500 for defending the

judgment if a writ of error is granted. It went on to order the total amount of attorney fees of $11,250 "immediately and instantly awarded to her" subject to remittitur for those appellate steps not taken. It is this provision that Safeway characterizes as "unwarranted, without precedent, an abuse of discretion and an act that was arbitrary, unreasonable and patently beyond the necessities of this case." It also argues that this provision deprived it of its due process rights under the State and Federal Constitutions.

In *International Security Life Ins. Co. v. Spray*, 468 S.W.2d 347 (Tex.1971), the court specifically approved the award of attorney fees for both trial and appeal subject to remittitur for the non-prosecution of an appeal. *Id.* at 349. In doing so, the court cited several previous Texas cases approving this type of award. *Id.* Such awards have also been approved by subsequent appellate decisions. *See Bridge City v. Port Arthur*, 792 S.W.2d 217, 229 (Tex.App.—Beaumont 1990, writ denied); *cert. denied*, 499 U.S. 977, 111 S.Ct. 1624, 113 L.Ed.2d 721 (1991); *Reynolds v. McCullough*, 739 S.W.2d 424, 431 (Tex. App.—San Antonio 1987, writ denied). Indeed, in *Pullman v. Brill, Brooks, Powell & Yount*, 766 S.W.2d 527 (Tex.App.—Houston [14th Dist.] 1988, no writ), the court rejected a due process argument similar to that presented by Safeway. *Id.* at 530. Under the authorities which we have pointed out, we overruled Safeway's sixth point.

■ We must now consider Cooper's remaining cross-points. In her second cross-point, she challenges the trial court's failure to award exemplary or treble damages pursuant to Chapter 41 of the Civil Practice and Remedies Code, article 21.21 of the Insurance Code and the Deceptive Trade Practices Act. We initially note that Chapter 41 of the Civil Practice and Remedies Code authorizes exemplary damages for specific types of causes of action, expressly excluding actions brought under Chapter 21 of the Insurance Code or the D.T.P.A. Tex. Civ. Prac. & Rem. Code Ann. § 41.002 (Vernon 1997). Because Cooper was not awarded actual damages under a cause of action within the purview of Chapter 41, she was not entitled to an award

of exemplary damages. *Travelers Indemnity Co. v. Fuller*, 892 S.W.2d 848, 852 (Tex. 1995).

Cooper next argues she was a third party beneficiary under the Tellos' policy and as such, the trial court erred in failing to award her actual and exemplary damages for violations of the Insurance Code and the D.T.P.A. However, in *Allstate v. Watson*, 876 S.W.2d 145, 147 (Tex.1994), the court rejected the contention that a third party claimant has standing to recover from an insurer under article 21.21 of the Insurance Code. *Id.* at 150. In the course of its opinion, the court affirmed the same holding as to the D.T. P.A. made by the court of appeals. *See Watson v. Allstate*, 828 S.W.2d 423, 427 (Tex.App.— Fort Worth 1991). Cooper's second cross-point is overruled.

In her third, fourth, fifth and sixth cross-points, Cooper argues the trial court abused its discretion by only awarding approximately half the attorney fees to which she was entitled under the evidence. In the course of presenting that challenge, she strenuously argues we should disregard the trial court's findings of fact and conclusions of law because they were filed one day after the return date prescribed by Rule 297 of the Rules of Civil Procedure. Consideration of that question requires we note that none of the challenged findings of fact or conclusions of law directly address the issue of attorney fees. Moreover, this and other courts have held that where the delay does not prejudice a party's ability to present her appeal, the courts will disregard such minor violations. *See Bostwick v. Bucklin*, 144 Tex. 375, 190 S.W.2d 818, 819 (1945); *Robles v. Robles*, No. 01–94–00367–CV, —— S.W.2d ——, 1996 WL 443707 (Tex.App.—Houston [1st Dist.] August 8, 1996, no writ); *B & W Cattle Co. v. First National Bank of Hereford*, 692 S.W.2d 946, 950 (Tex.App.—Amarillo 1985, no writ). Thus, we will consider these remaining cross-points under the standards applicable to the determination of attorney fees generally.

When attorney fees are recoverable, the amount rests in the sound discretion of the trial court and its findings will not be disturbed absent an abuse of discretion.

*Travelers Ins. Co. v. Brown*, 750 S.W.2d 916, 919 (Tex.App.—Amarillo 1988, writ denied); *General Production Co., Inc. v. Black Coral Investments*, 715 S.W.2d 121, 124 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The gist of Cooper's contention, without the citation of applicable authority, is that we should increase the amount of attorney fees awarded by the trial court. It is the rule that although appellate courts may suggest remittitur of an excessive allowance of attorney fees, they are not authorized to increase such an allowance. *See General Productions*, 715 S.W.2d at 124; *Neal v. Neal*, 606 S.W.2d 729, 732 (Tex.Civ.App.— Beaumont 1980, writ ref'd n.r.e.); *Reintsma v. Greater Austin Apartment Maintenance*, 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1977, writ dism'd); *Grimes v. Robitaille*, 288 S.W.2d 211, 213 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.). The record does not show the trial court abused its discretion in its award of attorney fees. Cooper's cross-points four through six are overruled.

By her seventh point, Cooper asks us to award her the damages permissible under Rule 84 of the Rules of Appellate Procedure. That rule authorizes an appellate court to award a prevailing appellee up to ten percent of the damages award, or if no damages were awarded, up to ten times the total taxable costs, if the court determines the appeal was taken for delay and without sufficient cause. However, in determining whether such an award should be made, the appellate court must review the record from the standpoint of an advocate to determine whether there are reasonable grounds to believe the judgment should be reversed. *In Re Estate of Kidd*, 812 S.W.2d 356, 360 (Tex. App.—Amarillo 1991, writ denied); *Lewis v. Deaf Smith Electric Coop., Inc.*, 768 S.W.2d 511, 514 (Tex.App.—Amarillo 1989, no writ). Circumstances which would support the award of such damages have been described as those presenting "no reasonable hope of reversal," *In Re Estate of Kidd*, 812 S.W.2d at 360, or where the possibility of reversal was so improbable as to defy a reasonable belief of success, *Gray v. Turner*, 807 S.W.2d 818, 824 (Tex.App.—Amarillo 1991, no writ).

An additional factor to be considered in the determination whether the appeal is brought for the purpose of delay is the degree to which appellants have meaningfully prosecuted the appeal. For example, the failure to file a statement of facts, *Archer v. Wood,* 771 S.W.2d 631, 633 (Tex.App.—Dallas 1989, no writ), and the failure to meaningfully support points of error in accordance with Rule 74(f) of the Rules of Appellate Procedure, *Hennigan v. Hennigan,* 677 S.W.2d 495, 496 (Tex.1984); *Holberg & Co. v. Citizens National Assurance Co.,* 856 S.W.2d 515, 518 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Lewis,* 768 S.W.2d at 514; *Daniel v. Esmaili,* 761 S.W.2d 827, 830 (Tex.App.—Dallas 1988, no writ), have all been found indicative of an appeal brought for the purpose of delay. Our review of the record, in the light by which we must view it, does not present any of the factors which the courts have found to justify imposition of Rule 84 sanctions. Cooper's seventh cross-point is overruled.

In summary, in view of the disposition we have made of the various points and cross-points, we reverse and remand the judgment of the trial court, with the exception of that portion awarding Cooper's attorney fees. The severed portion of the judgment awarding attorney fees is affirmed.

### ON MOTION FOR REHEARING

In three points, appellees Maria and Jose Tello allege that we erred in our original opinion and that a rehearing should be granted. Disagreeing, we overrule their quest for rehearing.

In their first point, the Tellos argue that our discussion in which we noted Safeway met its burden in showing that the insurance application form satisfied the Insurance Board approval requirement of article 5.06 of the Insurance Code was an impermissible finding of fact by this court. In support they cite *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), for the proposition that a court of appeals "has no power to find facts."

For two reasons, this point is without merit. First, immediately after our observation that Safeway had established the application form met the statutory requirements, we held that the trial court correctly found the application was not attached to the policy and "we cannot consider the provisions of the application in deciding this appeal." Consequently, the application was not determinative in our disposition of the appeal.

Even so, our observation with regard to Safeway's application form is not in conflict with *Pool.* We agree that in *Pool* the court made it quite clear that an appellate court may not weigh the evidence to make a factual finding the factfinder did not make. *See id.* at 634. However, our observation was not based on a reweighing of conflicting evidence but was, rather, based upon the uncontroverted testimony of Don Brill. When competent evidence is uncontroverted, the relevant fact is established as a matter of law. *Lehmann v. Wieghat,* 917 S.W.2d 379, 382 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Without specific references to the record, the Tellos argue that Brill's testimony was "hotly contested" and controverted by Brill himself, Safeway's underwriting manual, and the Tellos' witness Lilly Gilmer. Even though the Tellos make no specific references to support their argument, we have again reviewed the record and find nothing that controverts Brill's testimony that Safeway's application form had been approved by the State Board of Insurance. That being true, under this record, even had it been material in the disposition of the case, our observation would not have been improper.

The Tellos also contend "[T]he Appeals Court's findings that the declaration page allegedly incorporated by referencing to the policy as a proper exclusion is an improper finding by the Court of Appeals." As best we can tell, they are contending that we erred in finding the declarations page incorporated the policy by reference. A careful reading of the opinion will reveal that the nearest we came to such a finding was our statement that the policy incorporated the declarations page by reference. That holding was based upon the table of contents listed on the first page of the policy jacket. The first item listed on that table of contents is the declarations page. For all of the fore-

going reasons, the Tellos' first point is over-ruled.

In their second point, the Tellos merely repeat their argument challenging the effect of Brill's testimony. Consistent with our disposition of their first point, we also overrule their second point. In their third point, the Tellos reurge the argument made on original submission concerning the applicability of endorsement 515A promulgated by the State Board of Insurance. Remaining convinced that our original disposition of that question was correct, we overrule the third point as well.

In sum, the Tellos' motion for rehearing is overruled.